UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

**HEARING DATE:  February 21, 2018**
**HEARING TIME:  11:30 A.M.**

CHAPTER 13

IN RE:

CASE NO. 1-17-46069-NHL

Dennis Manuel dba
224 Bergen Bond Nevins Corp,

Assigned to:
Hon. Nancy Hershey Lord
Bankruptcy Judge

Debtor.
-----------------------------------------------------------X

**AFFIRMATION SUPPLEMENTING AND AMENDING, AND IN FURTHER SUPPORT OF, INSTANT FUND, LLC'S MOTION FOR AN ORDER CONFIRMING THE ABSENCE OF AN AUTOMATIC STAY OR ALTERNATIVELY DECLARING THE STAY ANNULLED AND RETROACTIVELY LIFTING THE AUTOMATIC STAY AND CONFIRMING THE FORECLOSURE SALE NUNC PRO TUNC**

TO THE HONORABLE NANCY HERSHEY LORD, UNITED STATES BANKRUPTCY JUDGE:

Pranali Datta, Esq., of STEIN, WIENER & ROTH, L.L.P., the attorneys herein for Instant Funding, LLC, ("Instant Funding" or "Movant")", the second mortgagee on the real property located at 224 Bergen Street, Brooklyn, NY 11217 (the "Property"), hereby submits this Affirmation in further support of Instant Funding's Motion (ECF Doc. No. 13; the "Motion") for entry of a "comfort Order", confirming that the automatic stay was not in effect as of the date of the Chapter 13 Case Filing on November 15, 2017 and to validate and confirm, pursuant to 11 U.S.C. 362(d)(4)(B), that the automatic stay did not stay, prevent or affect Instant Funding's foreclosure sale of the Property on November 16, 2017 ("Foreclosure Sale") under this Court's Order dated October 9, 2017 lifting the automatic stay pursuant to 11 U.S.C. §362(d)(4)(B) ("In Rem Order") in the chapter 7 case (no. 1-17-43546-nhl) of the Debtor's "a/k/a" in this case, 224 Bergen Bond Nevins Corp ("Bergen Bond"), which was

1

listed by the Debtor himself in his chapter 13 petition in this "separate bankruptcy case" as a business name that he has used in the last 8 years, see Exhibit "E" hereto, and **which is still pending before this Court**, and granting Instant Funding such other and further relief as to the Court may seem just and proper.

The first hearing on this Motion was held before this Court on January 10, 2018. The hearing was adjourned by the Court to February 21, 2018 at 11:30 a.m.

By this Supplemental Affirmation, Instant Funding hereby requests that this Court grant the following additional and/or alternative relief:

> (a)  Find, declare and determine that the filing of the petition herein by the Debtor was a nullity for the reasons set forth hereinbelow, as part of a scheme to delay, hinder, or defraud Instant Funding and other creditors that involved the transfer of all or part ownership of, or other interest in, the Property without prior notice to, or consent or approval of the Instant Funding, the first mortgagee on the Property, **or the approval of the chapter 7 trustee or this Court** in Bergen Bond's "separate" chapter 7 case, the Bankruptcy Code;

> (b)  Find, declare and determine that any automatic stay imposed by the Debtor's chapter 13 filing herein should be annulled so as to retroactively allow and validate the Foreclosure Sale nunc pro tunc; or alternatively

> (c)  grant Instant Funding relief from the automatic stay in order to allow it to proceed again as soon as practicable with a foreclosure sale of the Property, pursuant to 11 U.S.C. § 362(d)(4), and provided that this

Order is recorded in compliance with applicable New York law governing notices of interests or liens in real property, terminating the automatic stay under 11 U.S.C. § 362(a) as to Movant's interest in the Property, to be binding in any other case filed under the Bankruptcy Code purporting to affect the Property that is filed not later than two (2) years after the date of the entry of such Order, such that the automatic stay under 11 U.S.C. § 362(a) shall not apply to Movant's interest in the Property, except that a debtor in a subsequent case under this title may move for relief from this Order based upon changed circumstances or for good cause shown, after notice and a hearing; and

(d) grant Instant Funding such other and further relief as to the Court may seem just and proper.

1.    I am an attorney duly licensed to practice law in the State of New York and admitted to practice before the courts in the Eastern District of New York, and affirm the following under the penalty of perjury.

2.    I an associate of the Law Firm of STEIN, WIENER & ROTH, L.L.P., the attorneys for Instant Funding. I am fully familiar with the facts and circumstances of this case.

3.    As set forth in the Motion, Instant Funding is the holder of a Home Equity Line of Credit note and Mortgage secured by the Property located at 224 Bergen Street, Brooklyn, NY 11217. See Exhibit "A" to the Motion.

4.    The Debtor defaulted under the terms of the note and mortgage by failing to make monthly payments due under the note and mortgage for the month of September 1, 2007 (more

than 10 years ago) and thereafter.  Due to the Debtor's default under the terms of the note and mortgage, Movant commenced a foreclosure action in the Supreme Court of the State of New York, County of Kings ("State Court"), by the filing of a Summons and Complaint and Lis Pendens (index number 505342/2013; the "Foreclosure Action").  The Debtor failed to answer or otherwise appear in the Foreclosure Action, and an Order of Reference was granted to Movant by the State Court by Order dated September 11, 2014. A Judgment of Foreclosure was granted by the Supreme Court on October 28, 2015 and entered on January 14, 2016. See Exhibit "A".

5.      Movant scheduled a foreclosure sale for March 17, 2016.  On the very morning of the scheduled auction, March 17, 2016, the Debtor filed his first bankruptcy petition with this Court which was assigned Eastern District Case number 1-16-41073.  The filing was deficient as the Debtor failed to file a complete petition and failed to appear at the 341 Meeting of Creditors. That case was therefore dismissed on June 21, 2016. See attached Docket Report and Dismissal Order as Exhibit "B".

6.      Movant then scheduled a second foreclosure auction sale for August 25, 2016. However, on the eve of that foreclosure sale, the Debtor filed an Order to Show Cause in State Supreme Court, seeking to vacate the Judgment of Foreclosure and dismiss the complaint.  The state court granted a temporary restraining order, and as a result, the foreclosure sale scheduled for August 25, 2016 was cancelled.  The parties settled the Order to Show Cause by stipulation dated March 9, 2017.  Exhibit "C".  Inasmuch as Debtor had indicated a desire to satisfy his obligations under the terms of the note and mortgage, the terms of the stipulation provided that the Debtor withdrew his Order to Show Cause, waived defense of personal jurisdiction, acknowledged the Judgment of Foreclosure and Sale, and waived all defenses thereto. As part of the terms of the Stipulation Movant granted the Debtor a stay of its foreclosure sale until October

1, 2017, to give the Debtor time to arrange to sell the Property or otherwise satisfy his obligations.

7.    The Debtor didn't do either of these things.

8.    Ditech Financial, LLC, the senior mortgagee on the Property scheduled a foreclosure sale of the subject Property for July 13, 2017.

9.    To stop this foreclosure sale (and the foreclosure sale which that would schedule as soon as practicable after October 1, 2017 under the Stipulation), the Debtor: (a) conveyed the Property to Bergen Bond, by deed dated July 3, 2017, which is upon information and belief at best a shell corporation, with the Debtor as the principal and sole shareholder. The recorded deed did not reflect any consideration between the parties. (Exhibit "D"), and (b) then, as the sole principal of Bergen Bond, filed a skeletal Chapter 7 Bankruptcy petition with this Court on July 10, 2017 "for" Bergen Bond, which was assigned Eastern District case number 17-43546. Exhibit "E".

10.    The petition was deficient in that the Debtor failed to file a Statement pursuant to EDNY LBR 1073-2(b), a corporate disclosure resolution, a corporate resolution or a corporate ownership statement. See notice of deficient filing annexed hereto as Exhibit "F".

11.    Additionally, Movant's counsel has searched the online Corporation and Business Entity Database of the New York State Department of State, Division of Corporations, which lists business and not for profit corporations, limited partnerships, limited liability companies and limited liability partnerships, as well as other miscellaneous businesses. There is no listing for a 224 Bergen Bond Nevins Corp, or even 224 Bergen, Bergen Bond, in this database.

12.    Movant thereafter filed a motion for relief from stay with prejudice as to the Property pursuant to 11 U.S.C. §362(d) & (d)(4). This Court granted "In Rem" relief due to the

Debtor's continuous delay tactics and abuse of the Bankruptcy Code. In the terms of the In Rem Order dated October 9, 2017, the Court took specific notice that Debtor's bankruptcy filing "was part of a scheme to delay, hinder and defraud creditors", and granted "In Rem" relief, upon the condition that the Order be recorded upon the Property. As such, a future bankruptcy filing within the two (2) years purporting to affect the property would not operate to impose the automatic stay in bankruptcy. Exhibit "G". On December 20, 2017 Movant recorded the Order with Office of the City Register of the City of New York in CRFN 2017000465081.

13.    On September 12, 2017, the Debtor, as principal of Bergen Bond, filed a motion to dismiss Bergen Bond's Chapter 7 case claiming that it was "trying to satisfy the debt" and "unable to do so while case still pending." Exhibit "H". It is unclear how the Debtor was seeking to satisfy the debt, or how that motion was filed in good faith, as just nine days after the filing and six weeks prior the scheduled motion date, the Chapter 7 debtor conveyed the Property back to the Debtor Dennis Manuel by deed dated September 21, 2017, for no consideration. This deed to Dennis Manuel appears to have been signed by Dennis Manuel "for" Bergen Bond, as president of Bergen Bond. This deed was recorded in the Office of the City Register of the City of New York in CRFN 2017000363643. See Exhibit "I".

14.    This Motion to dismiss was denied by the Court, and Bergen Bond's case is still open and being administered by the chapter 7 trustee.

15.    It should be noted that although the Property remained property of the estate in Bergen Bond's case, the deed transferring the Property was nonetheless conveyed without the prior consent or approval of the chapter 7 trustee or this Court in Bergen Bond's case, in violation of the Bankruptcy Code.

16.    Moreover, the Chapter 7 case of Bergen Bond is currently still pending before the

Court and the chapter 7 trustee is still administering this case.

17.    Movant thereafter scheduled a third foreclosure auction sale of the Property for November 16, 2017.  On November 15, 2017, the day before the scheduled sale, the Debtor Dennis Manuel, now claiming to be the owner of the Property, filed this Chapter 13 case, notice of which Movant received on November 16, 2017, the date of the scheduled Foreclosure Sale. The Foreclosure Sale was held, with the successful bid by the third-party purchaser, Casey J. Scheir. See Notice of Sale and Terms of Sale annexed hereto as Exhibit "J".

18.    The Chapter 13 Petition signed by the Debtor expressly states that the Debtor lives at the Property.

19.    Movant made a motion in the Bankruptcy Court for a "comfort order" confirming the absence of the automatic stay, and confirming the validity of the foreclosure sale.  That motion was returnable January 10, 2018.  Movant herein amends the relief requested from the Court, as set forth above.

20.    Movant respectfully submits that the Debtor's pattern of behavior and the circumstances surrounding this case require that the Court herein annul the automatic stay imposed by the filing of the petition in this case and retroactively lift the stay to the date of the filing of the Debtor's petition.

21.    The automatic stay imposed by 11 U.S.C. § 362 is effective immediately upon the filing of the petition, however, a bankruptcy court has the power to take measures that grant relief from the automatic stay, including annulling the stay, under certain circumstances. See 11 U.S.C. § 362(d); Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 976 (1st Cir. 1997). "The power to annul is within the wide altitude of the court and is considered case by case. See In re WorldCom, Inc., 325 B.R. 511 (Bankr. S.D.N.Y 2005).

22.    Courts have determined that there are several factors to consider in determining whether an automatic stay should be annulled. See In re Stockwell, 262 B.R. 275, 281 (Bankr. D. Vt. 2001). The factors relevant to this case include whether the Debtor acted in bad faith, whether grounds for relief existed and the motion would have been granted prior to the automatic stay violation, and whether failure to grant retroactive relief would cause unnecessary expense to the creditor. See In re Stockwell, 262 B.R. 275, 281 (Bankr. D. Vt. 2001) (citing In re Lett, 238 B.R. 167, 195 (Bankr. W.D. Mo. 1999); In re Williams, 124 B.R. at 311, 317 (Bankr. C.D. Cal. 1991); In re Pulley, 196 B.R. 502 (Bankr. W.D. Ark. 1996)); see also In Re Worldcom, 325 B.R. 511 (Bankr. S.D.N.Y 2005).

23.    As to whether the motion would have been granted is the Movant had the opportunity to file it prior to the sale of the Property, it is evident that it would have as this Court has already granted such relief. In the prior case brought by the Debtor through Bergen Bond, the Court granted Movant an In Rem Order to bar the Debtor from filing the current case in Order to allow the Movant to proceed with the foreclosure of the Property without further delays. Unfortunately, the In Rem Order was not recorded before the scheduled Foreclosure Sale of the Property. Movant would have filed a motion to lift the stay imposed by the Debtor's current petition if it had the opportunity to do so prior to the most recent Foreclosure Sale, but the Debtor purposefully filed his bankruptcy petition the day before the sale to prevent Movant to bringing such a motion and the Court from making a determination.

24.    The second factor relevant to this case is the Debtor's evident bad faith in filing this case. The Debtor has for years transparently engaged in a pattern of behavior solely intended to delay the resolution of the Foreclosure Action and hinder the Movant in enforcing its rights under the terms of the subject note and mortgage. At the time that the Court granted the In

Rem Order in the Bergen Bond case, the Court noted that the Debtor's behavior "was part of a scheme to delay, hinder and defraud creditors". See Exhibit "G". Despite the Court's Order and admonition, the Debtor conveyed title to the Property without any notice to or approval by the chapter 7 trustee or this Court, and brazenly filed a third petition for bankruptcy and now asks the Court to preclude the Movant enforcing the sale of the property at auction and completing the conveyance of the Property. The Debtor has clearly proceeded in bad faith and, in such a situation, the Court should use its discretion to retroactively lift the stay imposed by 11 U.S.C. §362.

25.    Further, as set forth above, the Debtor stated in the Chapter 13 petition that the Debtor lives at the Property.

26.    The Property therefore is and was, as of the date of the filing of this case, the Debtor's residential Property. This is the case, even if the Debtor now is alleging that he is renting part of the Property as well as living there. See In re Addams, 564 B.R. 458 (Bankr. E.D.N.Y. 2017); see also, e.g., Richmond v. Caruso (In re Richmond), 2017 Bankr. LEXIS 4254 (Bankr. E.D.N.Y. 2017; Craig, Chief Bankr. J.)("To avoid the types of uncertainty potentially introduced by uses made by a debtor after a loan closes, the transaction should be measured by looking at the agreement as entered into and how the parties agreed and intended that the property would be used upon the closing of the mortgage loan.").

27.    The Debtor filed this case in bad faith, in that he knew at the time he filed this Chapter 13 petition that there was no way that he could ever successfully file or consummate a chapter 13 plan which would allow him to keep this residential Property which is subject to the mortgages of Ditech and Movant, given the arrears that are owed and the and monthly payments that would be coming due to be paid monthly during the case. (Movant's total claim as of the

date of the filing was in excess of $660,000; its total arrears as of the date of the filing were in excess of $305,000.00, and the monthly payments are $1,285.33. Ditech's filed proof of claim herein, which is no. 2 on the claims register maintained by the Clerk of this Court, sets forth that that the total sum due on the mortgage is $718,819.90; the arrears as of the date of the filing totaled $451,321.27; and the monthly payment due to Ditech is $3,307.94.)

28.     First, 11 U.S.C. Section 1322(d) expressly provides that "...the plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years."

29.     Next, the anti-modification provision set forth in 11 U.S.C. Section 1322(b)(2) explicitly provides that a chapter 13 plan may not "modify the rights of holders of secured claims... secured only by a security interest in real property that is the debtor's principal residence..."

30.     11 U.S.C. Section 1322(b)(5) expressly provides that "notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any...secured claim on which the last payment is due after the date on which the final payment under the plan is due".

31.     Here, the last payment due to Movant under its mortgage comes due after the date on which the final payment under the plan is due under the Bankruptcy Code, and Section 1322(b)(2) applies.

32.     But even if this were not the case, and the last payment due under the mortgage to Movant were due before the 5-year period following the date on which this case was filed, then 11 U.SC. Section 1322(c)(2) would be in effect. This section provides that "in a case in which the last payment on the original payment schedule for a claim secured only by a security interest

in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5)..." of the Bankruptcy Code.

33.    Section 1325(a)(5) of the Bankruptcy Code provides as follows:

with respect to each allowed secured claim provided for by the plan—

**(A)** the holder of such claim has accepted the plan;

**(B)**
**(i)** the plan provides that—
**(I)** the holder of such claim retain the lien securing such claim until the earlier of—
**(aa)** the payment of the underlying debt determined under non bankruptcy law; or
**(bb)** discharge under section 1328; and
**(II)** if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable non-bankruptcy law;
**(ii)** the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; **and**
**(iii)** if—
**(I)** property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
**(II)** the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
**(C)** the debtor surrenders the property securing such claim to such holder;

34.    The Plan filed by the Debtor simply ignores all of the above requirements, and states that the Debtor will pay the chapter 13 trustee the sum of $45.50 over 60 months, and that "[f]rom the payments so received, the trustee shall make disbursements as follows"):

(a)    Holders of allowed secured claims shall retain the liens securing such claims and shall be paid as follows:

DiTech-Holder of first mortgage on the property known as 224 Bergen Street, Brooklyn, New York 11217 (acct ending in 4980) to be paid a principal balance of $365,133.46 over 40 years at 3% interest for $1,307.12 plus taxes and insurance in the amount of $2,657.41 for a total payment of $3,964.53 to the Chapter 13 Trustee during Loss Mitigation until such time as a modification agreement can be reached and payments can be made directly to DiTech.

Instant Funding, LLC - Holder of second mortgage on the property known as 224 Bergen Street, Brooklyn, New York 11217 (acct ending in _J, to be paid directly a total principal balance of $494,740.84 over 40 years at 3% interest for a total payment of $1,771.10 including principal and interest.

35.    The Plan therefore impermissibly seeks to modify and restructure Ditech's and Movant's mortgages on the Debtor's residential Property, to sums less than the amount they are owed, over a 40-year period, with 3% interest.

36.    This attempted restructuring of the mortgage is not allowable because it exceeds the five-year cap on the life of a chapter 13 plan (assuming arguendo that the Court were to approve such 5-year period under Bankruptcy Code Section 1322{d][2]), and also violates the anti-modification provision in 11 U.S.C. Section 1322(b)(2). It does not provide for the cure of the arrears due to Instant Funding over 5 years, nor does it provide that the Debtor is to make all current payments that have come and shall come due to Instant Funding during the 5-year life of the Plan.

37.    In fact, Instant Funding has not received even one post-petition payment from the Debtor since this case began.

38.    Further, the plain truth is that the Debtor was aware when he filed this case that he couldn't file a Chapter 13 Plan that complies with the law, because he simply did not (and does not) have the money to do so – either at the time of the filing of this case, or even now, after he has filed amended schedules alleging that he has increased income available – to make the payments required under the law.

39.    This is shown by the Debtor's schedules filed with this Court.

40.    At the time the Debtor filed this case, no schedules were filed. See Exhibit "K."

41.     Thereafter, on December 1, 2017, the Debtor filed his original Schedules "I" and "J" (ECF doc. No. 19) which set forth that he had monthly income of $6,000 and monthly expenses of $6,867.53, resulting in a negative of $687.53 on a monthly basis. See Exhibit "L".

42.     On February 5, 2018, after Movant filed its Motion, the chapter 13 trustee filed a motion to dismiss this case (Exhibit "M"), and Ditech filed an objection to the plan which was filed, the Debtor filed an amended Schedule I and J (ECF Doc. Nos. 25 and 26, alleging that he now has monthly income of $8,150, and monthly expenses totaling $7,197.53, allegedly leaving him with $952.47 monthly surplus. See Exhibit "N".

43.     So even now, 3 months into the Chapter 13 case, with new income that the Debtor alleges he has found, the Debtor has nowhere near enough money to enable him to fund a chapter 13 plan that will comply with the Bankruptcy Code.

44.     In fact, the Debtor's case herein – just as with the prior filed cases - was filed in bad faith, based on an invalid transfer from a chapter 7 Debtor which did not have approval to make this transfer, after In Rem relief from the stay had been granted to Movant in that case, based on the bad faith filing in that case - solely to try to stop the sale, with no chances of success.

45.     The filing of this case should be deemed a nullity, or at the very least as showing the Debtor's continuing bad faith and abuse of the Bankruptcy Code as a scheme to delay, hinder, or defraud Instant Funding and his other creditors.

46.     Movant also respectfully submits that the Court should consider whether the filing of this Chapter 13 case by the Debtor at the time that Bergen Bond's chapter 7 case was still pending was a nullity in that the Debtor thereby was seeking to file simultaneous bankruptcy cases.

47.    As stated above, the Debtor's petition states that Bergen Bond is his known

business name.

48.    The docket of this case therefore shows that the Debtor is Dennis Manuel dba 224

Bergen Bonds Nevins Corp. See copy of first page of docket annexed hereto at Exhibit "K".

49.    The attempt to simultaneously file this Chapter 13 case while Bergen Bond's

chapter 7 case was (and is) still pending, and the Trustee can administer the surplus from the

Foreclosure Sale conducted by Movant, for the benefit of Bergen Bond's creditors and estate, is

not allowed by any Courts in these circumstances.  As reviewed in Turner v. Citizens Nat'l Bank

(In re Turner), 207 B.R. 373 (B.A.P. 2nd Cir. 1997):

> There is a decided difference of opinion over whether a debtor may ever
> simultaneously maintain two separate bankruptcy proceedings. In re Jones,
> 117 B.R. 415, 421 (Bankr. N.D. Ind. 1990). In the first line of cases,
> courts have read an old Supreme Court opinion to be a strict prohibition
> against ever having two cases open simultaneously. In re Heywood, 39
> B.R. 910, 911 (Bankr. W.D.N.Y. 1984)(citing Freshman v. Atkins, 269
> U.S. 121, 46 S. Ct. 41, 70 L. Ed. 193 (1925)). The Heywood court
> premised its holding on the fact that a debtor possesses only one estate for
> the purpose of trusteeship and each bankruptcy must be administered as a
> single estate under a single chapter of the Bankruptcy Code. This
> continues to be the majority view. Norwalk Savings Society v. Peia (In re
> Peia), 204 Bankr. 310, 1996 WL 768266 at *4 (Bankr. D. Conn. 1996). A
> minority view soon developed in some courts which declined
> to [**17] adopt a per se rule against such filings and permit a debtor to
> file a chapter 7, receive his or her discharge, and then file a second petition
> under chapter 13 to reorganize the debts which have not been discharged
> although certain administrative acts of the chapter 7 case such as the
> trustee's filing of a final report have not already been completed. In re
> Hodurski, 156 B.R. 353 (Bankr. D. Mass. 1993); In re Kosenka, 104 B.R.
> 40 (Bankr. N.D. Ind. 1989); Frenz, 142 B.R. at 614 n.2 (citing
> cases). While the majority view may be viewed as an absolutist position,
> the minority view does run the risk of making available "an easy avenue
> for abuse of the bankruptcy system" that would allow debtors to file
> multiple cases if they do not achieve their intended goal in a particular
> case. In re Bodine, 113 B.R. 134, 135 (Bankr. W.D.N.Y. 1990).
>
> Despite ... courts' differences as to the propriety of simultaneous filings,
> there is universal agreement among [all Courts]... that where a debtor files

for chapter 7 relief and then files for protection under chapter 13 before receiving a discharge that the chapter 13 case is a nullity because the filing_ of simultaneous petitions is "contrary to the obvious contemplated function of the Bankruptcy Code to resolve a debtor's financial affairs by administration of a debtor's property as a single estate under a single chapter within the code."

Turner, supra, 207 B.R. at 378. See also, e.g.. In re Lord, 295 B.R. 16,21 (Bankr. E.D.N.Y. 2003; Craig, Chief Bankruptcy Judge)("Perhaps the debtor's clearest reason for filing a new Chapter 13 case, rather than converting the case from Chapter 7 to Chapter 13, is that the debtor upon conversion would be required to pay all the mortgage payments that had accrued from the initial filing of the Chapter 7 petition through the conversion to Chapter 13, which he conceded he was unable to do. This does not justify the debtor's Chapter 13 filing, but rather shows that the debtor is attempting to manipulate the bankruptcy process to obtain the benefit of the automatic stay while evading the requirements of Chapter 13. See 11 U.S.C. § 1322(b)(2) and (b)(5) (which, taken together, prohibit a Chapter 13 debtor from modifying a home mortgage except by "curing any default" under a Chapter 13 plan while maintaining current mortgage payments during the pendency of the case); In re Lynch, Nos. 5:14-bk-50001, 5:16-bk-50272 (S.D. W. Va. Dec. 2, 2016) (Volk, J.).

    50.    With regard to the third factor relevant to this case, Movant would absolutely incur unnecessary additional expenses if the retroactive relief and annulment is not granted. Movant has already incurred extensive costs in the Foreclosure Action and the three bankruptcies filed by the Debtor.  Movant proceeded to auction with a third-party purchaser for the Property. If the sale is thwarted, Movant will again be delayed, incur additional attorney's fees, have to schedule another auction. Further delay will also deplete the remaining equity in the Property. Movant currently has a third-party purchaser ready to complete the sale of the Property.

51.     The eventuality of another auction is particularly likely in this scenario where the Debtor has submitted amended Schedules "I" and "J" that makes it evident that the Debtor does not have the financial resources to make both mortgagors on the Property whole under the requirements of Chapter 13 reviewed above (or even in Chapter 11, which like chapter 13, contains an anti-modification clause in respect of mortgages on residential real property. See 11 U.S.C. Section 1123(b)(5). The Debtor has not filed a confirmable plan, nor is he able to do so, and the Debtor knew at the time he filed this case that he could not do so. The plan filed on November 15, 2017 provides for the payment to the Trustee of $45.00 per month. The arrears on the loan are approximately $305,000.00 and cannot be paid in full. Despite the Debtor's claims to the contrary, no other plan has been filed.

52.     Based on the Stockwell factors relevant to the case herein, the equities in this case require that the Court grant retroactive relief from the stay imposed by the commencement of this case. See In re Market Holdings, Corp. 428 B.R. 579 (Bankr. S.D.N.Y. 2010).

53.     Furthermore, the Debtor's ownership of the Property is in question in this case. Debtor, Bergen Bond, during the pendency of the Chapter 7 case, conveyed the Property to himself by deed dated September 21, 2017. The recorded deed does not reflect any consideration for this conveyance. Exhibit "H". This conveyance is voidable by the appointed Trustee in that case pursuant to 11 U.S.C. §549 that states that a "trustee may avoid a transfer of property of the estate − (1) that occurs after the commencement of the case; and…(B) that is not authorized under this title of by the Court." The Trustee in the case filed by Bergen Bond has been advised that the Debtor in that case has conveyed its sole asset to its principle who thereafter filed for bankruptcy as an individual. Both the Trustee and the Court have a wide range of powers to rein in the Debtor's abusive and fraudulent conduct. See In re Barbieri, 199 F.3d 616, 621–22 (2d

Cir. 1999) (examples of protections to prevent abuse); In re Gucci, 126 F.3d 380, 390–91 (2d Cir. 1997). The reversal of the conveyance of the Property back to Bergen Bond, deeming the Property not a part of the Debtor's estate in the current case would thwart the Debtor's bold-faced attempts to manipulate the system and hinder the resolution of the Foreclosure Action.

54.    To the extent that the Court declines to annul the automatic stay, the Movant requests that the stay now be lifted pursuant to U.S.C. 11 §362(d)(4)(B) in order to allow the Movant to proceed with rescheduling an auction of the Property and proceeding with the Foreclosure Action.

55.    Upon information and belief, the only parties who are entitled to notice of these proceedings are Debtor Dennis Manuel dba 224 Bergen Bond Nevins Corp, the U.S. Trustee and the Chapter 13 Trustee.

**WHEREFORE**, for all the foregoing reasons, it is respectfully requested that under all the facts and circumstances in this case, an Order be issued by this Court, granting Instant Funding the relief sought in the Motion and as supplemented herein, together with such other and further relief as this Court deems to be just and proper under the circumstances.

Dated: Carle Place, New York
February 20, 2018

PRANALI DATTA, ESQ. (pd 5591)